# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-00008-GCM

| | |
|---|---|
| JENNIFER POPE BALESKY, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on cross-motions for summary judgment by the Plaintiff (ECF No. 13) and Defendant (ECF No. 16). Plaintiff also filed a response to Defendant's motion (ECF No. 19). The matter is now ripe for consideration. Having carefully considered the parties' briefs and supporting materials, along with the administrative record and the applicable law, the Court will grant the Plaintiff's motion, deny the Defendant's motion, and reverse the decision of the Commissioner.

## I. BACKGROUND

Jennifer Balesky, a 42-year-old woman, applied for disability insurance benefits on March 19, 2018. A.R. 15.[1] Balesky, a former nurse, claimed disability based on major depressive disorder, panic disorder, anxiety disorder, post-traumatic disorder, chronic migraines, Type II diabetes mellitus, sleep disorder, elevated heart rate/tachycardia/arrhythmia, gastro-esophageal reflux disease, and sleep apnea beginning on February 22, 2018.[2] Her application was denied initially and on reconsideration. A.R. 131, 151. Balesky sought a hearing before an administrative law

---

[1] Citations to A.R.__ are to the Administrative Record.
[2] Balesky initially sought disability effective February 22, 2013. She changed the claimed onset date by an amendment to her application. A.R. 372.

judge (ALJ). The ALJ held two hearings in November 2019 and June 2020. On June 18, 2020, the ALJ issued his hearing decision. He concluded that Balesky was not disabled within the meaning of the Social Security Act. The Appeals Council denied review on November 13, 2020. Balesky then sought judicial review in this Court under 42 U.S.C. § 405(g).

II. **STANDARD OF REVIEW**

A District Court reviewing a final decision of the Commissioner of Social Security may consider only two things: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Although this threshold is not high, it requires "more than a mere scintilla of evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021). In reviewing for substantial evidence, a District Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).

III. **DISCUSSION**

The Social Security Administration employs a five-step process to determine whether a claimant is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4) (2021). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity, i.e., whether they are working. Next, the Commissioner considers whether the claimant has a severe impairment, or impairments that are severe in combination. Then the Commissioner considers "the Listings," a category of impairments that are so severe that the claimant is automatically deemed to be disabled. Fourth, the Commissioner determines the claimant's "Residual Functional

Capacity," defined as what a claimant "can still do despite his limitations." *Id.* § 404.1545(a). Finally, the Commissioner considers whether the claimant is capable of performing other jobs in the local or national economy. The plaintiff carries the burden at the first four steps; the government carries the burden at the last. *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Balesky raises three issues on appeal. First, she argues that the statutory tenure protections enjoyed by the Commissioner are unconstitutional and necessitate remand. Second, she argues that the ALJ improperly evaluated the opinion of one Dr. Fitzgerald. Finally, Balesky claims that the ALJ failed to account in the RFC for functional limitations caused by her migraine headaches. Because the Court agrees with Balesky's third argument, it will begin and end there.[3]

During the hearings convened by the ALJ, Balesky testified that she experienced frequent and severe migraine headaches—between three and five times per week when not taking all of her medications,[4] but at least three times per week even when fully medicated. A.R. 21, 60. Balesky's migraines were debilitating, causing her "very bad nausea and vomiting." A.R. 21. To combat her symptoms, Balesky used Imitrex, which further incapacitated her. *See id*. After taking Imitrex, the ALJ noted, "all she can do is lie down in a dark room for several hours." *Id*. The ALJ added that Balesky "stated that she sometimes [had] to take a second Imitrex, which extends the time that she is unable to do anything other than lie down." *Id.* Balesky also testified that her migraines had previously caused her to miss work: In 2013, she took short- and then long-term disability because

---

[3] The greater part of the parties' briefing relates to Balesky's constitutional argument. However, under the doctrine of constitutional avoidance, federal courts should avoid rendering constitutional rulings unless absolutely necessary. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010).

[4] Botox apparently provided relief to Balesky, but was not always covered by her insurance provider. *See* A.R. 49, 59–60.

she was "having difficulty meeting the attendance policy" at work due to her migraines and other conditions. A.R. 21.

The ALJ agreed, at Step Two, that Balesky's migraines were a "severe impairment." A.R. 23. At Step Four, the ALJ concluded that the migraines

> limited her to light work with occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; and frequent stooping, kneeling, crouching and crawling in an environment with no concentrated exposure to unprotected heights, moving mechanical parts, loud noise, bright light . . . fumes and pulmonary irritants prior to the date last insured.

A.R. 24. Balesky argues that this RFC failed to account for absenteeism associated with her migraines. ECF No. 14 at 20. The Court agrees.

When an ALJ assigns an RFC, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Additionally, "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a **regular and continuing basis** . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 SSR LEXIS 5 at *19 (emphasis added). Finally, "[a]n ALJ has the obligation to consider all relevant evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010)).

Here, the ALJ failed to consider to what extent Balesky's debilitating migraines would affect her ability to work on a "regular and continuing basis." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *19. If the ALJ even partly credited Balesky's testimony, it seems highly likely that she would have periodically missed work because of her condition. *See Moore v. Colvin*, 743 F.3d 1118, 1127

4

(7th Cir. 2014) ("The ALJ's decision did not reflect any likelihood of absences or breaks at work related to migraines, and that is simply unsupported by the record."); *Mann v. Colvin*, 100 F. Supp. 3d 710, 723 (N.D. Iowa 2015) (directing ALJ to consider the need for absences due to migraine headaches on remand). Although the ALJ discussed evidence in the record that related to absenteeism, he did not account for it in the RFC. As a result, the ALJ did not "build an accurate and logical bridge from the evidence to his conclusion."[5] *Monroe*, 826 F.3d at 189. Because the Court cannot conclude on the present record that the ALJ's decision is backed by substantial evidence, remand is necessary. *See Mascio*, 780 F.3d at 636 ("Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.").

## IV. ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED**. Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**. The decision of the Commissioner is **REVERSED**, and the matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g). The Clerk is respectfully directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: December 14, 2021

Graham C. Mullen
United States District Judge

---

[5] The government invokes the doctrine of ha                                                                al arguments. *See* ECF No. 17 at 12–13. As a result, the Court does not consider whether the ALJ's failure to adequately consider absenteeism in the RFC was harmless. *See Keller v. Berryhill*, 754 F. App'x 193, 199 (4th Cir. 2018) (noting that a harmless error argument may be waived by the Commissioner's failure to raise it).